I'm here today on behalf of the Appellant Fulfillment Services, Inc. This is a relatively simple case compared to the last one you heard. We are blessed by a finding of the district court that indeed UPS's conduct in making reference to collectively agreed-to classifications, while it was not a participant in the governing authority, violated the Motor Carrier Act. We discussed that at page 9 on our blue brief. The question is whether that violation of Part B of Title 49 is actionable as a private right of action. What's your damage for this? The damages are extensive. What kind of damage is it? Is it an antitrust damage? No. What kind of damage is it? Well, UPS imposed an unlawful freight rate because it was based on classifications that it was not allowed to use. One can say, first of all, that the entire freight charge should be refunded, perhaps with an offset for quantum merit. One could argue that the profits made by UPS on the basis of this charge, unlawful charge, should be returned. How else can one enforce the remedial and deterrent purposes of the statute? The statute is very clear. They had to participate in this committee in order to use the collective results of the committee's work. Had they participated, they would have been subject to findings by the Surface Transportation Board, oversight by the Surface Transportation Board. Here's the 800-pound gorilla on the block thumbing its nose at the regulation and says, we're above all that. We don't have to participate. We can charge anything we want. We can use any collective rates we want. We're above the law. Can I just ask you for a second? We're back to what do you get when you have a private right of action? You have private right of action under the statute for damages, and then we break up what you posit as your damages. It seems that, by and large, the damages you're talking about are really restitutions and penalties, which are not damages under Supreme Court law. Could you just respond or comment on that? I believe that if someone profits from unlawful conduct, the party from whose pocket these profits were taken has been damaged, and one can measure damages by the amount of profits taken on these unlawful freight charges imposed on fulfillment and others. Okay. So just let me ask you. You haven't quite answered my question, because that is a third element of your damages, which is potential profits. Would you agree that restitution would not be damages? Restitution focuses on and disgorgement focuses more on the gains because of the unlawful conduct. But it focuses on recoupment. Pardon? Restitution focuses on recoupment. Recoupment. Correct. Would restitution be damages, in your view, under the statute? I think some of the case law uses the terms with less precision than one might expect, but I think that a recoupment of unlawful gains could be termed damages. Isn't that, though, if you overpay a tariff, isn't your theory of someone profiting by getting that tariff simply a component of the overpaid tariff? It is a component of the overpaid tariff. So isn't it, in fact, a restitution rather than damages that you're seeking? I think one can measure as damages as well. 14704A2 speaks in terms of damages. 13103, which is the other statute we rely on for relief here, speaks solely in terms of remedies that are preserved. 13103 says, except as otherwise provided in this part, the remedies provided under this part are in addition to the remedies existing under another law or common law. Traditionally, the savings clause embodied in that language goes way back to 1877, section 22 of the original ICC Act, and that has always focused on remedies preserved, and that would include common law remedies of restitution, recoupment, however you want to define them. I thought that's what the Supreme Court addressed in the Penn Railroad case. Yes. That savings, what you term as a savings clause. Certainly they did there. They also addressed it in Arrow, in which all of the members of the court recognized that there is this residue of authority under that savings clause that doesn't address, it doesn't say causes of action are in addition to causes of action. It says remedies. This Court ought to give meaning to the plain word used. The remedies that were available at common law are also available in addition to any other specific remedies made available under the ICC Termination Act. Mr. Cullen, I've got the same concern Judge McKeown has. Let me come at it from a slightly different way. You are essentially seeking a declaration that the rates, the tariff that UPS declared is illegal because it didn't comply with the Motor Carrier Act. They didn't participate in the committee that set the rate that all their competitors follow, correct? This Court doesn't have to make that declaration. It's right in the statute. The statute itself says that those rates may not be applied. Right. And so your theory is that the rates themselves are void. They're, in essence, unenforceable rates. That's correct. Okay. And so then the question becomes whether or not as damages your clients are entitled to recover from UPS the total amount of monies that they pay to them to ship all their freight. That would be disgorgement, would it not? That would be disgorgement. Okay. As an equitable defense, they might be entitled to some sort of quantum merit because there was value given. Exactly. Okay. Would your theory also be that the rate that UPS charged was actually higher than the rates set by the committee? All right. The committee doesn't establish the rates. They only establish the classifications here. But it's classification times miles times rate. So it's all part of the formula. What is so violative of the act to use a common classification of freight so that everybody who ships freight knows what a particular item of freight is considered for purposes of calculating rates? Using a common classification is very beneficial. Of course. And people benefit from it. But the Congress, in its wisdom, says you may do that, but you may only do it under very orderly circumstances, under the supervision of the ICC, now the Service Transportation. Okay. But these classifications were established before deregulation, were they not? I mean, aren't we dealing with them? It's an ongoing process, but they have been used certainly since before deregulation. Classifications that have been around a long time. That's correct. Okay. And UPS apparently participated for some period of time. They did. And you wouldn't quarrel with the fact that up until that point of time there was nothing wrong with the rates they were charging because they were participating. There was nothing wrong with their using the classification. I wouldn't go so far as to bless UPS's rates under any condition. But what I'm trying to get at is what changed after they dropped off participation on the committee. Was there some reorganization in the classification of freight so that things that had been in one category were now considered in a different category? I don't believe that. That would not be our point. These classifications are ongoing and they're refined constantly by the committee. Now we're back to what's troubling me, and that is I still don't understand how that damaged your client. If everybody was using the same classification of freight so that we knew what we were talking about when we tried to figure out what the rate was going to be to move a particular class of freight from one place to another, what's the harm to your client? There's an excellent discussion of that in Kmart versus security services, which we cite to the court. And it points out that the results can be harsh, but you have a system in which the legitimacy of a rate is determined in very specific ways, a tariff. And when people don't follow the prescribed statutory requirements, the tariff is no longer legitimate and may not be applied. That kind of begs the question. I understand as a matter of administrative law, and assuming that there still was an interstate commerce commission, why you would need to address that issue in determining the harshness of the penalty that the commission imposed if it found a violation. But now the question seems to be under a private cause of action theory, how is your client damaged by UPS's conduct? Is your argument, I just step into the shoes of the I'm now a private interstate commerce commission in effect as a private attorney general under the statute, and therefore I'm entitled to benefit from the same principle? You stand in the same shoes as any consumer. You're entitled to pay legitimate lawful rates. You are not required to pay illegitimate. The same analogy that your honor offers could be made in a price-fixing case. Sure, the prices were fixed, but you had other offers, you had other choices, and the fact that there was this little price-fixing over here. And antitrust case is a whole other kind of scheme. It is a whole other. It's a different kind of scheme, so I want to just take you back and ask one question to make sure I understand. To the extent, let me just take your proposition that this tariff is illegal. What administrative remedies are available to you to establish that? Congress, when it passed the private right of action, and we cite the legislative history in our brief, which I commend to your attention, discouraged people from pursuing administrative goals. They said these disputes ought to be sent to the courts under the private right of action, and the agency should not expend its scarce resources. Okay. Resolving conflicts like this. My question is a little different. I know you have an argument on what is or the scope of the private right of action. What are your remedies from an administrative standpoint for a declaration or a ruling that the tariff is either void or illegal? As a practical matter, the agency has neither the staff nor the expertise to handle these problems. So you have a legal remedy, but one that you don't find effective because of the, obviously, the changes in the status of how we regulate transportation. We never get to test the legal remedy because of the practical, the impracticalities of trying to do it between an agency who's been told by Congress not to entertain these things and has not given the money to staff up to resolve the disputes. Everything is new. We're in supposedly the era of small government. Let me just get back, because you keep, I know you keep trying to make your speech about legislative history and how terrible it is on the, is it still on the books? Is there still an administrative remedy on the books, albeit one that you think is impractical? I think that the remedy on the books is not for a statutory violation. They have some very minor and we believe inapplicable remedies and overcharge cases, which this is not one. I don't think there is an effective administrative remedy or an administrative remedy that is available. Okay. Thank you very much, Mr. Cone. I'll reserve whatever you'd like to give me, a comment or two, if necessary, for the rebuttal time. Thank you. Good morning. Good morning, Your Honors. May it please the Court, I'm Greg Colton from Morrison Forrester for UPS. If it please the Court, I'd like to just start and point out that the district court did not make any finding that UPS had violated 13703F. If you look at the decision in the excerpts of the record, the judge assumed for the purpose of the opinion that there was a violation and then went on to hold that there would be no private right of action. I just wanted to make that clear for the record. Stepping back for a minute, because this isn't all intuitive, I just wanted to make sure it's clear in the mind of Your Honors what 100-weight service is, because it helps put it a little bit in context. And this is both in the complaint and it's in the supplemental excerpts of the record attached to the judicial notice request that we submitted that was granted by the district court. And this is what the plaintiff argues. 100-weight service provides an opportunity for a shipper that's shipping multiple packages that weigh over a certain threshold to the same address. It then gives that shipper a chance to get a better rate, because if you're taking things to the same address, it's more cost-efficient. So it's a service that gives the benefit of a better rate. Your Honors have focused on the issue of damage, which I happen to think is the best issue to focus on. It's not the issue that the district court focused on, but it's an alternative route for decision. And I think in this case, especially since developments that have happened since the district court decision, the damage ground is probably the best way to explain that. But on the damage point, the plaintiff is alleging that UPS improperly used the NMFC, the National Motor Freight Classification, to figure out whether shippers were entitled to the 100-weight discount. And what they say is that the tariff references classes 50 to 150, and only if you were in those classes were you then entitled to the better rate for 100-weight service. The real threshold problem from the damages standpoint is that the plaintiff is within that classification range. The plaintiff is, I believe, in the complaint, which is in the excerpts of record. They allege that they're in class 65. I think this is in paragraphs 10 and 12 of the complaint. And they recite the details of a bill they received from UPS of just one bill. It shows that they got the better 100-weight rates. So what they're complaining is that UPS allegedly used the National Motor Freight Classification to give them a better rate than other shippers received. Maybe they would have gotten a better rate if they didn't rely on the publication and had its own discount. Well, they might have had a separately negotiated discount. There's nothing in the record about that. But they certainly haven't alleged that. They haven't alleged that as a causative element. The only thing we know for sure is they got a better rate from UPS. We don't know whether or not it was a competitive rate. We don't know whether they could have gotten a better rate from a competitor. Right. What we do know is something they conceded below, which is part of our supplemental excerpts of record at 7, is that they concede that they don't challenge whether UPS's rates were reasonable or whether UPS properly applied the rate. So it's the rate was ---- So UPS doesn't have any trust claim because they would have to allege anti-competitive conduct and satisfy all the allegations. What's happened since Judge Barry ---- Judge Barry got it right. When you look at the statute, and I want to point out a misquote at page 4 of the appellant's opening brief, they quote the statute in quotes with emphasis, basically to say that the statute prohibits UPS from using the classifications to set rates. That's actually an incorrect quote of the statute. With the statute 13703F1B, what it says is that the meaning of it is in order to get the benefits of 13703, and it says with respect to agreements that are rates, collective rates, classifications, et cetera, that are established under agreements approved under 13703. So in other words, if you're going to rely on a tariff or classification whatever that's been promulgated under an agreement that was approved by the STB, then you must participate in that collective tariff in order for, quote, such provisions to apply. The appellants would interpret such provisions to mean that the you can't rely on the collective tariff, that those are the such provisions. But the way that Judge Barry interpreted it, which is the right way to interpret it, is that you have to participate if you want the antitrust exemption to apply. And what puts that in focus, I hope, if you look at the title of 13703F, it's entitled, I believe, collective rates antitrust exemption. That's the whole purpose of the statute. 13703F then goes on to say that the participation issue is only relevant in relation to agreements that are approved under 13703. Okay? The only significance of approval of an agreement under 13703 is under 13703AD, which is that the participant then gets antitrust immunity for the making or the carrying out of the agreement. So the participation language in 13703F1 is directly linked to the antitrust exemption. The proof in that, and we submitted this this morning because I think it's important background for your honors to have, is that the STB, this collective agreements, they have been an issue since good old times that you were talking about in the last argument, and they were very controversial for many years. The STB doesn't have to approve agreements, but the STB can approve agreements if it finds they're in the public interest. In May of 2007, and this is the supplemental citation that we submitted, the STB disapproved all of the agreements. There are no longer any approved agreements under 13703, including the NMFC. The NMFC, the classification system, is no longer approved. It's not subject to an antitrust exemption anymore. It's not an antitrust violation, I'll say as a footnote, for reasons having to do with antitrust law, but it's no longer an agreement that's approved under the statute, and so forth. There's no significance to participation any longer. And what that shows is that the participation language is directly linked to that antitrust exemption. But I assume that the shippers are still using the classifications as a basis for computing their rate. Some carriers are doing that, absolutely. And I want to say this is mainly a freight issue, and it's not mainly a small package issue with respect to UPS or FedEx or any other carrier. You'll see from the documents attached to the judicial notice that it's our position that the court could take judicial notice that UPS didn't rely on the NMFC at all for its small package operation. There are words in that part of the tariff, in that, that carried into the tariff to 2004, but the NMFC ceased to be a governing publication, quote, for UPS and its tariffs back in 2000. Will you comment on the private right of action damages, and he laid out what he thought his client, or the range of things his client could recoup under that section. Right. Your Honor, you mentioned the Pennsylvania Railway case, and there are actually three Pennsylvania Railway cases that are, I think, important to this case. But there's one that's more important than the rest, and that's Pennsylvania Railway v. International Coal. I think that covers our case, almost every point in the case, not the intended 13703, but on the damages point. And what the Pennsylvania International Coal case says is, first of all, the words of the statute are, carrier is liable for damages sustained by a person as a result of an emission of that carrier. In Pennsylvania Railway, the plaintiff complained that its competitors had received better rebates than it had, and it sued the carrier, and as damages in that case, or as relief in that case, it sought the difference between the rebates it had received and the rebates that its competitor had received. And the court says quite clearly, you can't claim that element of damages, because you must show not merely the wrong of the carrier, but that the wrong has, in fact, operated to your injury.  The second owner-operator new prime case, it's in the class certification context, but there's a good discussion there, too. And if I could just wind up by referring to the savings clause argument. The district court got that just right under Pennsylvania Railway v. Sondman, but there are a series of other cases that are right on. The savings clause, depending on how you say it, isn't a grant of power at all. It can't add to the federal statute. What it does is it preserves a preexisting right, and if there had been a right at common law for failure to participate, to obtain restitution for failure to participate at common law, then there might be an argument here, and then we'd have to go down the road and talk about whether it was preempted by another aspect of the act. But that's not the case. There is no common law right to recover for failure to participate. And on that issue, I would point you to Aero Transportation v. Southern Railway, which I think is the best savings clause case. That's the closest to it. That was authored by Justice Brennan, and it's right there. What he says is that conclusion that you could take advantage of another right pursuant to the savings clause, that would only follow if prior to the adoption of the act there had been a clearly recognized equitable power to enforce rate changes. The issue in that case is whether a court, as opposed to the ICC, could enjoin rate changes. And since there wasn't, you couldn't rely on the savings clause to add that remedy. And the same issue here. You can't add a remedy to the savings clause unless it's a remedy that existed for the claim before. Thank you, Your Honors. Thank you, Mr. Cohen. Mr. Cohen, a minute in rebuttal. Thank you. I remind the Court that this comes before you on the granting of a 12B6 motion. The test is, are there, we allege damages. We allege that we were damaged at least by the difference between the last lawful rate before UPS terminated its membership on the committee, and what it charged during the period in which it was charging unlawful rates. But on a 12B6 motion, the question is, are there any, are there no circumstances under which we could recover anything because of this? This is the test of the district court's decision. Security services is really the flip side of this. In that case, the moda carrier was trying to get more revenue from the district court. And the shippers, covering a period of time in which it was a nonparticipant in the governing publication, the court said its rate was unenforceable, and it may not get additional revenue. We are just the flip side of this. We're the shippers. We're saying that rate is unenforceable, it may not be used, you're not entitled to anything. And if it doesn't damage you in an antitrust sense, how does it damage you? Antitrust has nothing to do with this, Your Honor. Well, it is, because that's the exemption. It says if you comply with the publication, you get antitrust exemption. So my question to you is, if you don't have an antitrust injury, which you say you don't, what is your injury? The antitrust exemption applies to participants in the governing publication, and it describes their lack of vulnerability under the antitrust laws as participants. UPS is not a participant. It is a nonparticipant. So it is subject to antitrust prosecution. It is subject to antitrust prosecution. That's not what you're doing. That's not what we're doing. So what is your damage, if it's not an antitrust damage, what is your damage? Our damage is exactly like security services, because UPS enforced an unenforceable rate. If we didn't pay our bill and UPS came into court on a collection matter, there is no way this court could allow UPS to collect its tariff, because it is void and unenforceable, not usable. Not for a shipment since May of 2007, though, right? That's right. During this period in which they were nonparticipant, if we had failed to pay our bill and they came into court, there is no way under security services that they could have collected that. We're just on the other side of that. We made the mistake of paying in ignorance, not knowing that this was an unlawful rate at the time. We want compensation for them imposing this unlawful rate. We want disgorgement, correct? We want disgorgement. Certainly that would be an excellent measure of what happened. And are they entitled to quantum merit of some form? Probably. But we paid an unlawful rate. They could not enforce this in an affirmative action of their own under security systems. We can enforce it on the flip side of that. And the fact that damages may pose some interesting problems conceptually doesn't mean that the court should have dismissed this under 12b-6. There are theories that this court should recognize. And, of course, the district court would benefit greatly from your exposition of 13-103. Those full range of equitable remedies are available to you. And this is the only mechanism that can be used when a big company like UPS decides it's above the law. The only way you can enforce their nonparticipation is through this private right of action to protect the people who paid what they paid. And this is the only way you can enforce their nonparticipation. And this is the only way you can enforce their nonparticipation. Thank you very much. Thank you.
judges: Silverman, McKeown, Tallman